UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR GROSHONG, JR.,

        Plaintiff,           Civil Action No.: 14-12183
                                     Honorable Thomas L. Ludington
        v.                   Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 15, 16]**

Plaintiff Arthur Groshong, Jr. appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the administrative law judge ("ALJ") failed to give good reasons for rejecting parts of the opinion of Groshong's treating physician.. For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 16]** be **DENIED**;

- Groshong's motion **[R. 15]** be **GRANTED IN PART** to the extent it

seeks remand, but **DENIED IN PART** to the extent it seeks reversal and direct award of benefits; and,

- the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Claimant's Background and Claimed Disabilities

Groshong was a twenty-nine year old high school graduate on his alleged onset date. [R. 12-2, Tr. 27; R. 12-5, Tr. 121]. He had taken some college classes and apprenticed as an electrician, last working in 2006 as an electrical contractor when he voluntarily terminated his employment due to the long commute. [R. 12-2, Tr. 28-32; R. 12-6, Tr. 134]. He alleges disability based on bilateral ankle pain and instability stemming from multiple sprains and fractures he suffered in his youth, as well as multilevel degenerative disc disease and chronic pain in his spine. [R. 12-6, Tr. 133]. He was last insured for benefits on December 31, 2011. [*Id.*, Tr. 130].

### B. Procedural History

Groshong filed an application for DIB, alleging disability as of October 26, 2006. [R. 12-5, Tr. 121-22]. The claim was denied initially and Groshong timely filed a request for an administrative hearing, which was

held on November 15, 2012, at which both he and a vocational expert ("VE") testified. [R. 12-2, Tr. 22-57; R. 12-4, Tr. 69-75, 79-86]. In a February 14, 2013 written decision, the ALJ found Groshong not disabled. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [R. 12-2, Tr. 1-5]. Groshong timely filed for judicial review. [R. 1].

    **C.    The ALJ's Application of the Disability Framework**

DIB is available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1] Second, if the claimant has

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Groshong was not disabled. At step one, he determined that Groshong had not engaged in substantial gainful activity since his alleged onset date. [R. 12-2, Tr. 12]. At step two, he identified the severe impairments of degenerative disc disease of the cervical, thoracic and lumbar spine and osteoarthritis of the bilateral ankles. [*Id.*]. The ALJ concluded at step three that none of

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

Groshong's severe impairments, either alone or in combination, met or medically equaled a listed impairment, specifically considering Listing 1.02 (Major dysfunction of a joint) and Listing 1.04 (Disorders of the spine). [*Id.,* Tr. 13].

Next, the ALJ assessed Groshong's residual functional capacity ("RFC"), finding him capable of sedentary work that involved occasional lifting of ten pounds and frequent lifting of less than ten pounds, with no more than two hours of standing and/or walking and six hours of sitting with the ability to alternate between sitting and standing every twenty to thirty minutes. [*Id.*] Groshong could only occasionally balance, stoop, crouch, squat, or climb ladders, ropes and scaffolds, could frequently kneel, crawl or climb ramps or stairs, and frequently use foot controls with his right lower extremity. [*Id.*] He could never use air, pneumatic, power, torque or vibratory tools, and could perform no work involving exposure to dangerous or unprotected machinery or unprotected heights. [*Id.*]

The ALJ determined at step four that Groshong's RFC prevented him from returning to his past relevant work. [*Id.,* Tr. 16]. At step five, with the assistance of VE testimony, the ALJ concluded that a hypothetical claimant matching Groshong's profile could perform a substantial number of other occupations in the national economy, such that Groshong was not

disabled.  [*Id.,*Tr. 16-17].  The VE specifically testified that such a claimant could perform the jobs of inspector (4,000 jobs in the region), sorter (4,500 jobs), and final assembler (1,200 jobs).  [*Id.,*Tr. 53].

## II.     STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

With these standards in mind, this Court finds that the ALJ's determination that Groshong is not disabled is not supported by substantial evidence.

## III. ANALYSIS

Groshong argues that the ALJ erred in the weight given to treating physician Dr. Geoffrey Linz's medical source statement, and in assessing Groshong's credibility. The Court agrees that the ALJ erred in applying the treating physician rule, and that Groshong's credibility will necessarily need to be reassessed upon remand.

### A. Treating Physician Rule

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL

7

374188, at *5 (1996)). Those good reasons must be articulated with specificity. SSR 96-2p at *5. This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted). The Court will "not hesitate to remand" when an ALJ's opinion "do[es] not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole v. Astrue,* 661 F.3d 931, 939 (6th Cir. 2011) (internal quotation marks and citation omitted).

Dr. Linz, who treated Groshong six times between September 2010 and February 2012, issued a medical source statement in June 2012 comprised of a series of check boxes and space for explanation. [R. 12-7, Tr. 355-58]. Noting that Groshong suffered from lumbar facet syndrome and Schuermann's disease in his spine, Dr. Linz checked boxes limiting him to occasional and frequent lifting of less than ten pounds, and standing and/or walking less than two hours a day. [*Id.*, Tr. 355-56]. He did not check a box for the amount of time Groshong could sit, but did check a box that Groshong must periodically alternate between sitting and standing. [*Id.*,Tr. 356]. Dr. Linz also limited Groshong's ability to push and pull with both his upper and lower extremities, confined him to only occasional

8

balancing, crawling, stooping, or climbing of ramps, stairs, ladders, ropes and scaffolds, and no kneeling or crouching. [*Id.*]. Further, Dr. Linz limited Groshong to only occasional reaching, handling, fingering and feeling due to cervical and lumbar spine arthritis. [*Id.,* Tr. 357]. Finally, Dr. Linz noted Groshong should only have limited exposure to temperature extremes, noise, dust, vibration, humidity/wetness, hazards and fumes due to difficulty with strength and balance. [*Id.,* Tr. 358].

> The ALJ gave some weight to Dr. Linz's opinion, stating that it was
>
> somewhat ambiguous and incomplete as there is no indication as to how long the claimant can sit. Some of the limitations he suggested are warranted and have been included in the above residual functional capacity. However, there is no objective medical evidence to support all of his suggested limitations, and the doctor has failed to provide an explanation justifying his findings. I also find it significant that Dr. Linz wrote in his notes that the claimant had not been working for more than two years, but was not disabled.

[R. 12-2, Tr. 16]. Groshong argues that these are not good reasons for rejecting Dr. Linz's opinion. The Court agrees.

The ALJ's vague statement that "some" of Dr. Linz's limitations are warranted while other were not is the first clue that he has violated the requirement that his reasons for not giving controlling weight Dr. Linz's opinion be stated with specificity. Comparing Dr. Linz's limitations to the ALJ's RFC, the Court infers that the ALJ rejected the limitations to lifting

9

only less than ten pounds occasionally and only occasional reaching, handling, fingering and feeling. More problematic still is the ALJ's reliance on vague, inaccurate and misleading reasons to reject those restrictions.

The ALJ's claim that Dr. Linz did not explain the justification for all of his limitations is not true. The standard Social Security medical source form he completed requested the "medical/clinical finding(s)" that supported the restrictions. Dr. Linz responded that the restrictions were justified because Groshong suffered from lumbar facet syndrome, Schuermann's disease, and lumbar and cervical arthritis. [R. 12-7, Tr. 355-58]. The ALJ did not explain why those diagnoses were insufficient. Moreover, objective medical evidence – MRI imaging of Groshong's cervical, thoracic and lumbar spine – supported those diagnoses. [*Id.,*Tr. 297-302].

Additionally, the reliance on Dr. Linz's statement in a treatment note that Groshong was "not disabled" is unsatisfactory, as that statement may have reflected Dr. Linz's understanding of Groshong's legal status rather than an assessment his physical abilities. [*Id.,*Tr. 319]. This possibility is heightened by the fact that Dr. Linz subsequently completed an application for Groshong to obtain a handicap parking sticker. [*Id.,*Tr. 316]. To the extent that the ALJ found Dr. Linz's statement that Groshong was "not disabled" to be inconsistent with his limitations, it was incumbent on the

ALJ to recontact Dr. Linz for clarification.  SSR 96–5p, 1996 WL 374183, at *2.  See also Ferguson v. Comm'r, 628 F.3d 269, 273 (6th Cir.2010) (recontact required when ALJ finds that treating physician's opinion is not supported by evidence in the record, but the ALJ is uncertain about the bases for the opinion).

The ALJ stated that there is no objective evidence to support Dr. Linz's recommended limitations, but failed to discuss the record evidence in relation to this conclusion.  This error is exacerbated by the fact that a review of the record reveals evidence that is consistent with Dr. Linz's opinion, rendering the ALJ's claim inaccurate.  For instance, the ALJ completely omitted any discussion of physical therapy records showing that Groshong was unable to lift a five-pound weight from the floor, that he had difficulty with repetitive reaching and lifting, and had numbness in his right arm.  [R. 12-7, Tr. 291-92].  Specialist John Flood noted at the conclusion of physical therapy that it had not helped much, a record the ALJ also ignored.  [Id.,Tr. 293].  He also failed to note Dr. Linz's exam findings that Groshong's neck was tender to palpation with spasms present, and was experiencing aching, stiffness and pain in all of his joints, and that the physical therapist noted left scapular (shoulder) muscle weakness.  [Id., Tr. 292, 318-21, 330].

11

While the ALJ did document Groshong's cervical, thoracic and lumbar MRI and x-ray results, [R. 12-2, Tr. 14; R. 12-7, Tr. 164-65, 197, 200, 298-300], he failed to note that those findings supported the diagnoses of lumbar facet syndrome, lumbar and cervical arthritis and Schuermann's disease, upon which Dr. Linz relied in his medical source statement. [R. 12-7, Tr. 293, 296-97; 355-58]. The ALJ also ignored the fact that Groshong had tried Neurontin, Ultram and Zanaflax, and Tylenol 3, Naprosyn, Darvocet or Vicodin for pain, and that he was fitted for a stimulator, but was unable to find sufficient relief. [*Id.,*Tr. 166, 169-70, 176, 177, 181, 185, 293, 295, 318-25, 327-28]. This evidence contradicts the ALJ's claim that *no* objective evidence exists supporting Dr. Linz's claimed limitations on lifting, reaching and fine manipulation. The ALJ's "good reasons" for rejecting Dr. Linz's restrictions are thus unsupportable.

This error is not harmless. "[A] violation of the good reasons rule can be deemed to be harmless error if (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has

12

met the goal of [20 C.F.R.] § 404.1527(d)(2)³ . . . even though she has not complied with the terms of the regulation." Cole, 661 F.3d at 940 (internal quotation marks and citation omitted). None of these circumstances applies here.

First, as noted above, the existence of at least some evidence supporting Dr. Linz's opinion renders it not patently deficient. See Gallagher v. Comm'r of Soc. Sec., 2011 U.S. Dist. LEXIS 97085, at *36-38, 2011 WL 3841632 (E.D. Mich. Mar. 29, 2011) adopted by 2011 U.S. Dist. LEXIS 97054, 2011 WL 3841629 (Aug. 30, 2011). Second, the entire point of this appeal is that the ALJ did not adopt Dr. Linz's opinion as a whole or make findings consistent with it. Finally, the Commissioner has not met the goals of § 404.1527(d)(2).

The goal of this regulation may be met when an ALJ indirectly attacks the supportability of a treating physician's opinion, permitting the claimant and court to clearly understand the reasons for the weight given the treating physician. Friend v. Comm'r of Soc. Sec., 375 Fed. Appx. 543, 551 (6th Cir. 2010). Here, the ALJ's did not indirectly attack Dr. Linz's opinion in a manner that provided clarity for Groshong or the Court. His

---

³ This section requires the commissioner to consider medical sources, including treating physicians, when deciding whether a claimant meets a listing, when issuing a RFC and when applying vocational factors.

13

reasoning was vague, and his conclusions that some restrictions were not supported by objective medical evidence – despite the MRI results and other objective medical evidence – calls out for far greater clarity.

In an attempt to provide the good reasons where the ALJ failed, the Commissioner details the evidence that she believes supports the ALJ's rejection of some of Dr. Linz's restrictions. However, "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004)

Moreover, the Court must reject the Commissioner's invitation to weigh the objective medical evidence, including MRI scans that demonstrate arthritis, degenerative changes, lumbar facet syndrome and Schuermann's disease, and render an opinion regarding whether they support specific limitations. "[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). *See also Simpson v. Comm'r of Soc. Sec.*, 344 F. Appx 181, 194 (6th Cir. 2009) ("ALJs must not succumb to the temptation to play doctor

14

and make their own independent medical findings.") (citation and internal quotation marks omitted).

For these reasons, the Court recommends remand and that the ALJ be instructed to either provide good reasons for not giving controlling weight to all of Dr. Linz's restriction or to incorporate all of the restrictions in Groshong's RFC.[4]

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Groshong's Motion for Summary Judgment **[R. 15]** be **GRANTED IN PART** and **DENIED IN PART** as outlined above, the Commissioner's Motion **[R. 16]** be **DENIED** and this case be **REVERSED AND REMANDED** for further consideration consistent with this Report and Recommendation.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: August 12, 2015

---

[4] The Court will not specifically address Groshong's credibility argument except to say that the ALJ, upon remand, should reassess Groshong's credibility, taking great care to *accurately* portray his subjective statements and reported activities of daily living, and to recognize changes to them over the course of his insured period as his condition worsened. [*Compare* R. 12-2, Tr. 14 (relying on application reports in finding that Groshong goes hunting once every two weeks) *with* R. 12-2, Tr. 44 (last hunted in 2010), R. 12-7, Tr. 276 (used to enjoy fishing and hunting)].

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 12, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
